571537

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW FLOWER,

                    Plaintiff,

v

DATASPACE, INC., a Michigan corporation,
and BENJAMIN TAUB, an individual,

                    Defendants.

_____/

> Case: 2:08-cv-12505
> Judge: Tarnow, Arthur J
> MJ: Komives, Paul J
> Filed: 06-11-2008 At 04:25 PM
> CMP FLOWER V. DATASPACE, INC, ET AL
> (TAM)

LAWRENCE S. GADD (P46282)
JILL A. TUCKER (p66839)
Kecskes & Gadd, P.C.
Attorneys for Plaintiff
621 S. Main Street
Plymouth, Michigan 48170
(734) 354-8600

_____/

## COMPLAINT AND JURY DEMAND

THERE IS NO PENDING OR RESOLVED CIVIL ACTION ARISING OUT OF THE TRANSACTION OR
OCCURRENCE ALLEGED IN PLAINTIFF'S COMPLAINT.

NOW COMES Plaintiff, Andrew Flower ("Plaintiff"), by and through his attorneys, Kecskes

& Gadd, P.C., and for his Complaint against Defendants states as follows:

### JURISDICTION AND VENUE

1.     Plaintiff Andrew Flower is a resident of the City of Leawood, State of Kansas

("Plaintiff").

2.     Defendant Dataspace, Inc. is a Michigan corporation with its corporate headquarters

in the City of Ann Arbor, State of Michigan ("Defendant Dataspace").

3.      Defendant Benjamin Taub ("Defendant Taub") is the majority shareholder of Defendant Dataspace and a resident of the City of Ann Arbor, State of Michigan.

4.      The amount in controversy exceeds $75,000.00, exclusive of costs.

5.      This jurisdiction of this Court is invoked pursuant to 28 USC § 1332(a). Jurisdiction for the declaratory relief sought is premised upon 28 USC § 2201 and § 2202.

6.      Venue lies in the Eastern District of Michigan pursuant to 28 USC 1391(a).

## FACTUAL ALLEGATIONS

7.      In May 1997, Plaintiff began working for Defendant as a computer consultant.

8.      In 2003, Defendant Dataspace's revenues were approximately $3.5 million.

9.      In January 2004, Plaintiff agreed to purchase 20% of Defendant Dataspace stock and entered into a Buy-Sell Agreement ("the Agreement") with Defendant Taub.

10.     The Agreement provided that in the event Plaintiff voluntarily withdrew from Defendant Dataspace, either Dataspace or Defendant Taub and the other shareholders would purchase Plaintiff's shares for "fair market value."

11.     The Agreement required that the fair market value of Plaintiff's shares be determined by an independent appraisal completed within sixty (60) days of notice of voluntary withdrawal.

12.     In March 2004, Defendant Taub took a cash distribution from Defendant Dataspace in order to lower Dataspace's value; at the same time, Taub also created a $300,000.00 loan to himself from Dataspace

13.     In June 2004, Defendant Taub paid nontaxable dividends to himself, Plaintiff and a third shareholder. No other quarterly after-tax dividends were paid to Plaintiff either before or since.

2

14.     Upon information and belief, in December 2004, Defendant Dataspace's revenues for 2004 were approximately $4.8 million dollars and its taxable income for the same period was approximately $73,000.00

15.     By December 2005, Plaintiff had made the necessary payments to become a minority (20%) shareholder of Defendant Dataspace.

16.     Upon information and belief, in 2005, Defendant Dataspace had annual revenues of approximately $5.6 million and its taxable income was approximately $220,000.00.

17.     In the first half of 2006, Defendant Taub promised to pay back the interest and principal owed to Defendant Dataspace on Taub's $300,000.00 March 2004 loan from Defendant Dataspace; Taub further promised that thereafter he would pay dividends to Dataspace shareholders, including Plaintiff.

18.     In the latter part of 2006, Defendant Taub expressed concerns regarding Defendant Dataspace's cash flow, despite the fact that he had paid himself approximately $300,000.00 over the previous six-month period.

19.     Defendant Taub refused to let the shareholders, including Plaintiff, inspect Defendant Dataspace's financial records, despite repeated requests that he do so.

20.     In July 2006, Plaintiff and Defendant Taub and another shareholder met with business acquaintances if Taub who had expressed an interest in purchasing Defendant Dataspace.

21.     In October or November 2006, Taub asserts that the valuation expectations for Dataspace are 1.3 times revenue.

22.     Upon information and belief, in 2006, Defendant Dataspace had annual revenues of $7.14 million dollars and had taxable revenue of approximately $600,000.00.

3

23.     In November 2006, Defendant Dataspace received a $10 million offer to purchase all the issued and outstanding shares of Dataspace stock; Taub indicated that he believed Dataspace was worth $12 million.

24.     In January 2007, Defendant Taub failed to call a shareholder meeting regarding the $10 million offer to purchase; instead, Defendant Taub unilaterally determined that the offer was not "legitimate," and rejected it.

25.     In January 2007, Defendant Dataspace re-filed for a line of credit; on the credit application, the stated value of the company was $7.2 million dollars.

26.     In January 2007, Plaintiff requested from Defendant Taub that a meeting be held to discuss the $10 million offer; Taub scheduled and then subsequently cancelled a meeting to discuss the offer.

27.     In January and February 2007, Plaintiff sought guidance from Defendant Taub regarding selling Plaintiff's shares to Bonnie Cywinski, Director of Corporate Affairs; Defendant Taub advised Plaintiff at that time that shares should be valued on the basis of the $7.2 million dollar figure.

28.     Plaintiff was instructed by Defendant Taub to claim 20% of $7.2 million dollars as an asset of Plaintiff's.

29.     In March 2007, Plaintiff notified the other shareholders of his intention to withdraw from the partnership.

30.     Pursuant to the Agreement, a valuation of Defendant Dataspace was required to be completed within sixty (60) days after Plaintiff notified the other shareholders of his intention to withdraw from the partnership.

4

31.     Pursuant to the Agreement, Plaintiff was entitled to 75% of the fair market value of his 20% ownership as of date; 20% of 7.2 million dollars equals $1.44 million dollars, and 75% of $1.44 million dollars equals $1.08 million dollars.

32.     Defendant Dataspace, through Defendant Taub, offered Plaintiff $321,224.00 for his shares.

33.     Plaintiff refused Defendant Taub/Defendant Dataspace's offer because Taub had previously indicated that the value of the stock was significantly higher (i.e., based on revenues of approximately $7.14 million as set forth in Dataspace's Bank One application) and Taub sought to discount Plaintiff's share by 35% rather than the 10% discount provided under the parties' agreement.

34.     In August 2007, Defendant Dataspace's tax firm, Plante & Moran, PLLC ("Plante Moran") performed the required valuation of the company.

35.     Upon information and belief, Defendant Taub/Defendant Dataspace did not inform Plante Moran about the $10 million offer.

36.     In addition to serving as Defendant Dataspace's corporate tax firm, Plante Moran is also Defendant Taub's personal accountant.

37.     Plante Moran had an obvious conflict in performing the valuation as there is a significant incentive for these accountants for Dataspace and Defendant Taub to provide a valuation that is in line with the interests of its clients, as opposed to a neutral valuation.

38.     On the basis of its tardy valuation, Plante Moran personnel determined that the value of Plaintiff's shares in Defendant Dataspace as of December 31, 2006 was $178,000.00.

39.     Plante Moran used an inaccurate, unsupported and inappropriate valuation methodology, resulting in a gross undervaluation of the company and a concomitant undervaluation of Plaintiff's shares.

40.     Upon information and belief, Taub deliberately withheld depositing checks received by Dataspace in 2007 in an effort to drive down Dataspace's 2007 taxable income.

41.     The accounting system that Defendant Taub/Defendant Dataspace uses does not conform to generally accepted accounting principles.

## COUNT I - BREACH OF CONTRACT

42.     Plaintiff hereby incorporates paragraphs 1 through 41 as if fully set forth herein.

43.     Pursuant to the Buy-Sell Agreement, Pursuant to the Agreement, a valuation of the company was required to be completed within sixty (60) days after Plaintiff notified the other shareholders of his intention to withdraw from the partnership.

44.     Defendants materially breached the express terms of the Agreement by failing to perform said valuation within the time provided by the Agreement.

45.     Where a party to a contract makes the manner of its performance a matter of its own discretion, that discretion must be exercised honestly and in good faith.  *See, e.g., Ferrell v Vic Tanny Int'l Inc,* 137 Mich App 238, 243 (1984).

46.     Implied in every contract is a covenant of good faith and fair dealing.  *See, e.g., Hammond v United of Oakland*, 193 Mich App 146, 152 (1992).

47.     Defendants breached the implied covenant of good faith, fair dealing and honesty by endeavoring to undervalue Plaintiff's shares in an effort to avoid paying Plaintiff the fair market value of those shares pursuant to the Agreement.

6

48.     By Defendants' own admissions on credit applications, the value of Defendant was $7.2 million dollars in March 2007.

49.     Accordingly, the fair market value of Plaintiff's shares in March 2007 was $1.44 million and he is entitled to 75% of that amount ($1.08 million dollars) under the parties' Agreement.

50.     As a result of Defendant's breach of said Agreement, Plaintiff has incurred damages, interest, costs and attorney's fees.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendant in the amount of $1.08 million, plus interest at the statutory rate from the date of filing and that the Court grant him such other and different relief as the Court deems warranted.

## COUNT II - MINORITY SHAREHOLDER OPPRESSION PURSUANT TO MCL 450.1489

51.     Plaintiff hereby incorporates paragraphs 1 through 50 as if fully set forth herein.

52.     The acts of Defendant Taub as discussed above are illegal, fraudulent, willfully unfair and oppressive to Plaintiff.

53.     The acts of Defendant Taub as discussed herein have been continuing, and Defendant Taub has engaged in significant actions and series of actions that substantially interferes with the interests of Plaintiff as a shareholder.

54.     The Agreement does not provide that Defendant Taub may fraudulently misrepresent the value of the company in order to deceive and mislead Plaintiff and undervalue Plaintiff's shares

55.     Plaintiff is entitled to the purchase by Defendants of his shares of Defendant Dataspace for fair market value.

7

WHEREFORE, Plaintiff requests that this Honorable Court order Defendants to purchase his shares of Defendant Dataspace for fair market value in the amount of $1.08 Million.

## COUNT III - DECLARATORY JUDGMENT PURSUANT TO 28 USC § 2201 *ET SEQ.* AND FRCP 57

56.     Plaintiff hereby incorporates paragraphs 1 through 55 as if fully set forth herein.

57.     There is an actual controversy between the parties. To wit, there is a dispute over the accurate valuation of Defendant Dataspace affecting the value of Plaintiff's shares in Dataspace.

58.     This Court has authority pursuant to 28 USC § 2201 and Fed R. Civ P 57 to adjudicate the issues in dispute and declare the legal rights of the parties.

59.     Plaintiff further requests the issuance of a preliminary injunction preserving the status quo of Defendant by prohibiting any unilateral (1) changes in management of the Corporation, including but not limited to changes in compensation to shareholders; (2) disposal or distribution of corporate assets other than the payment of creditors and employees in the ordinary course of business; (3) discontinuing the operation of any office or location, and (4) making any decision affecting the operation, management, structure, or business strategy of Defendant other than those required in the ordinary course of business or agreed to by the current shareholders of Defendant.

WHEREFORE, Plaintiff requests that this Court enter a declaratory judgment against Defendants pursuant to 28 USC 2201, declaring that the valuation Defendants provided Plaintiff grossly understates the value of Defendant Dataspace and ordering that a valuation be completed forthwith by a neutral accounting firm using generally accepted and accurate valuation methodology.

8

Dated: June   11, 2008                      Respectfully Submitted,

                                            KECSKES & GADD, P.C.

                                    By:     _____
                                            Lawrence S. Gadd (P46282)
                                            Jill A. Tucker (P66839)
                                            Attorneys for Plaintiff
                                            621 S. Main Street
                                            Plymouth, Michigan 48170
                                            (734) 354-8600

07-906/pleadings/complaint-final/06-11-08/1

9

# CIVIL COVER SHEET

County in which action arose _Washtenaw_

...civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided ...cal rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating ...he civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
ANDREW FLOWER

**DEFENDANTS**
DATASPACE, INC. and BENJAMIN TAUB

(b) County of Residence of First Listed Plaintiff   _Johnson County, Kansas_
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   _Washtenaw, Michigan_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Lawrence S. Gadd (P46282)
Kecskes & Gadd, P.C.
621 S. Main Street, Plymouth, Michigan 48170   (734) 354-8600

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

2/4

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☒ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

160

**REAL PROPERTY**

☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FOR...**
☐ 610
☐ 620
☐ 625
☐ 630
☐ 640
☐ 650
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee
☐ 465 Other Immigration Actions

☐ 640 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

Case: 2:08-cv-12505
Judge: Tarnow, Arthur J
MJ: Komives, Paul J
Filed: 06-11-2008 at 04:25 PM
CMP FLOWER V. DATASPACE, INC, ET AL (TAM)

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC subsection 1332
Brief description of cause:
Plaintiff alleges valuation of his stock in Dataspace pursuant to Shareholder Agreement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   $1,080,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
June 11, 2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?          ☐ Yes
                                                                       ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.        Other than stated above, are there any pending or previously    ☐ Yes
          discontinued or dismissed companion cases in this or any other  ☒ No
          court, including state court? (Companion cases are matters in which
          it appears substantially similar evidence will be offered or the same
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :